376 S.E.2d 634

STATE of West Virginia ex rel. Joseph C. HASH, Jr., President, Jackson County Bar Ass'n.; Kennad L. Skeen, and the Jackson County Bar Ass'n.

v.

Hon. Darrell V. McGRAW, Jr., Chief Justice, Supreme Court of Appeals.

No. 17953.

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

John D. Hoffman, PA, Ripley, for petitioners.

McHUGH, Chief Justice:

■ This case is before the Court based upon the motion of Joseph C. Hash, President, Jackson County Bar Association, Kennad L. Skeen, and the Jackson County Bar Association, to recuse Justice Darrell V. McGraw, Jr. from the case of *State ex rel. Crabtree v. Hash,* 180 W.Va. 425, 376 S.E.2d 631 (1988). The motion was considered and treated as a writ of prohibition against then Chief Justice McGraw, requiring him to show cause why a writ of prohibition should not be awarded against his participation in *State ex rel. Crabtree v. Hash.* The petitioners contend that a chief justice whose administrative actions later result in litigation before this Court must disqualify himself from deciding the case, as it creates the appearance of impropriety. We disagree and deny the writ.

The petitioners seek to disqualify then Chief Justice McGraw from deciding the case of *State ex rel. Crabtree v. Hash,* 180

W.Va. 425, 376 S.E.2d 631 (1988).[1] The pertinent facts of the underlying case which led to the motion to disqualify are necessary to understand the type of bias alleged by the petitioners.

The circuit judge of the Fifth Judicial Circuit (consisting of Calhoun, Jackson, and Roane counties) retired from office. The then Chief Justice of the West Virginia Supreme Court of Appeals, respondent McGraw, as the "administrative head of all the courts," issued an order appointing a judge for temporary service to the circuit. *W.Va. Const.* art. VIII, § 3. The petitioners believed that the order had lapsed. They also believed that they had authority under an old statute, *W.Va.Code*, 51–2–10 [1931], to elect a judge from among themselves. They elected petitioner Skeen who served as judge and conducted court for one day. The day Mr. Skeen presided as judge, the administrative director of this Court filed a writ of prohibition against him and the other petitioners. The writ alleged that *Code*, 51–2–10 [1931] had been superseded by current *W.Va. Const.* art. VIII, § 3, and therefore all respondents were acting without authority.

*W.Va. Const.* art. VIII, § 3 states in pertinent part:

The [supreme] court [of appeals] shall have general supervisory control over all intermediate appellate courts, circuit courts and magistrate courts. The chief justice shall be the administrative head of all the courts. He may assign a judge from one intermediate appellate court to another, from one circuit court to another, or from one magistrate court to another, for temporary service.

The petitioners allege that the then Chief Justice prompted the administrative director of this Court to file the writ of prohibition against them. Therefore, they allege that by his administrative actions, the then Chief Justice has predetermined that the attorneys acted contrary to law.[2]

At the outset, we note that: "Where a motion is made to disqualify or recuse an individual justice of this Court, that question is to be decided by the challenged justice and not by the other members of this Court." Syl. pt. 1, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984). *See also State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 642–43, 246 S.E.2d 99, 106 (1978). Then Chief Justice McGraw has not disqualified himself from deciding the underlying action.

■ Judges are ethically bound to impartially decide cases, as well as diligently discharge their administrative duties.[3]

Disqualification due to a judge's alleged interest in a case is merited when a judge has "a pecuniary or property interest in the matter to be decided. A remote or possible interest or merely an interest in a legal question will not warrant disqualification." *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 105, 207 S.E.2d 421, 425 (1973). The "interest" at stake in the underlying action is the power of the Chief Justice to temporarily assign judges. This interest is neither pecuniary nor proprietary, and is no longer in the hands of Justice McGraw.

---

1. Justice McGraw no longer serves as Chief Justice of this Court. The position rotates annually on the first day of January.

   We are not unaware of the fact that the events in this particular case no longer pose a problem. However, the possibility of a similar situation recurring makes it necessary to deal with the issue at hand.

2. The attorneys also allege, without factual support, that then Chief Justice McGraw's actions were motivated by political interests. They contend that his order intentionally created a vacancy in the circuit to force the governor to permanently fill the vacancy. We need not address this alleged "political interest" since it hinges on the inaccurate assumption that the order, naming a judge for temporary service "through Thursday, June 18, 1987, or until the appointment and qualification of a judge of said circuit" created a vacancy.

   Further, this allegation is completely unrelated to the issue before the Court—whether *W.Va.Code,* 51–2–10 [1931] has been superseded.

3. Canons 3(B)(1) and 3(C)(1)(a) of the *Judicial Code of Ethics* state:
   B. Administrative Responsibilities.
     (1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.
   C. Disqualification
     (1) A judge should disqualify himself in a proceeding in which his impartiality might

West Virginia, like other jurisdictions, discussed below, places both adjudicative and administrative duties on the Chief Justice of the Supreme Court of Appeals. This Court has never decided whether the administrative actions of the Chief Justice reasonably place into question his ability to impartially decide a subsequent case resulting from his actions. However, other jurisdictions, in similar situations, have found that the dual responsibilities of diligent administration and impartial adjudication do not create a conflict requiring disqualification.

In *Cameron v. Greenhill*, 582 S.W.2d 775 (Tex.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979), and *Palmer v. Jackson*, 617 F.2d 424 (5th Cir.1980), the issue was discussed in relation to the Texas Supreme Court's administrative control over the State Bar Association. The state bar decided to construct a facility for its members. The bar's executive committee assured its members that they would not be assessed greater fees if they supported a bar referendum for the facility. The referendum passed and the facility was constructed. However, the state bar did not receive enough donations to cover the construction cost of the facility. At the behest of the state bar's executive committee, the state supreme court, in its administrative capacity, ordered the bar to conduct a referendum on the issue of increasing membership fees to pay for the facility. The referendum passed and a member of the bar challenged, among other things, the qualifications of the entire court to impartially decide the case, since it had issued the order.

The Texas Supreme Court pointed out that its interest was "no greater than that of any other member of the State Bar of Texas or even of the public in general." *Cameron*, 582 S.W.2d at 776. Rather than apply the rule of necessity, the court instead found that an administrative action does not represent a pecuniary or personal interest that would reasonably affect the impartiality of the court in hearing a case which challenged the order. It relied on two cases, factually identical to *Cameron*, where the courts determined that an administrative action does not intimate the type of personal interest which reasonably affects impartiality. *Ables v. Fones*, 587 F.2d 850 (6th Cir.1978), and an unpublished Ohio case which was affirmed on appeal by the United States Supreme Court under the name of *Cuyahoga County Bar Association v. Supreme Court*, 430 U.S. 901, 97 S.Ct. 1167, 51 L.Ed.2d 577 (1977).

The same facts surrounding the Texas court's administrative order resurfaced in *Palmer v. Jackson*, 617 F.2d 424 (5th Cir. 1980), a class action suit against named defendants, the state bar and the state supreme court. The Fifth Circuit affirmed the district court's application of the *Pullman* abstention doctrine.[4]

The appellants argued that while the facts of the case met the *Pullman* elements (undecided issue of state law that could moot the constitutional grounds raised in federal court), the federal abstention was improper because the state supreme court would not impartially decide the issues. In their brief, the attorneys alleged circumstances identical to those alleged by the petitioners:

First, the fact that the Court is involved in the actions and circumstances that are in controversy renders it a suspect forum to resolve state law questions. Second, the Court has already determined the issue administratively because it issued the May 3, 1978 Order. Presumably, the Supreme Court of Texas would not have acted in any manner it thought was illegal. This lawsuit alleges that the May 3, 1978 Order for payment of the fee-assessment was illegal and invalid. To require these Plaintiffs to seek resolution of this issue in state court would require that they ask the Texas Supreme Court to declare that its acts were illegal,

reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

**4.** *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

that its administrative determination was in error, and to enjoin itself from enforcing its illegal acts and determinations. Reprint of appellant's brief, *Palmer v. Jackson,* 617 F.2d 424, 429 (5th Cir.1980).

The Fifth Circuit responded: "We find this argument against abstention unpersuasive. The fact that the Texas Supreme Court has taken certain action in its role as regulatory authority of the Texas bar does not render the court incapable of reviewing that action as a judicial body." *Id.* The Court noted that " 'it is not contrary to due process to allow judges and administrators who have had their initial decisions reversed on appeal to confront and decide the same questions a second time around.' " *Id., quoting Withrow v. Larkin,* 421 U.S. 35, 57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712, 729 (1975). The court concluded that "the state court's prior administrative involvement in the activities of the state bar is insufficient justification for depriving the state court of an opportunity to judicially decide the issues of state law presented." *Palmer,* 617 F.2d at 430.

Our court system is replete with cases and controversies that are of a hybrid nature, possessing administrative as well as judicial characteristics.[5] The administrative actions of the Chief Justice of the Supreme Court of Appeals of West Virginia in a particular case do not necessarily represent a pecuniary or personal interest that would affect the Chief Justice's impartiality, nor render the Chief Justice incapable of hearing the same case in a judicial capacity.

In this case, even if the then chief justice actually initiated the suit, his administrative actions, given the circumstances, do not reflect an interest or bias that would reasonably affect his ability to impartially

decide the case on the merits.[6] The Judicial Reorganization Amendment to the *West Virginia Constitution* vested administrative powers in the Chief Justice of the Supreme Court of Appeals. Granting petitions for recusal in cases that are casually related to the Chief Justice's administrative actions would subject the judicial system to an inordinate amount of delays and inefficiency.

■ There is no evidence that the actions of then Chief Justice McGraw were motivated by interests other than his duty prescribed by art. VIII, § 3 of the *West Virginia Constitution,* which is to be "the administrative head of all the courts." Clearly, his attempt to enforce the appointment of a judge for temporary service was in accord with his responsibility to act in an administrative capacity.

Furthermore, it is clear that *W.Va.Code,* 51–2–10 [1931] has been superseded by the rule-making power conferred upon this Court by art. VIII, § 8 of the *West Virginia Constitution:*

The administrative rule promulgated by the Supreme Court of Appeals of West Virginia, setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge, operates to supersede the existing statutory provisions found in W.Va.Code, 51–2–9 and –10 and W.Va.Code, 56–9–2, insofar as such provisions relate to the selection of special judges and to the assignment of a case to another circuit judge when a particular circuit judge is disqualified.

Syl.pt. 2, *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977).

Accordingly, the petitioners' writ of prohibition seeking to recuse then Chief Justice McGraw from participating in *State ex*

5. *See, e.g., Withrow v. Larkin,* 421 U.S. 35, 56–57, 95 S.Ct. 1456, 1469, 43 L.Ed.2d 712, 728–29 (1975), for just a few examples of judges acting in an administrative capacity.

6. While the filing of a writ of prohibition by the administrative director of this Court may seem drastic, the petitioners admit in their brief that the attorney selected from among them actually held court. We have previously held that a writ of prohibition is proper where a judge is im-

properly appointed. Syl. pt. 3, *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977). Furthermore, orders issued by a special judge who is later found to be unconstitutionally appointed are void. Syl. pt. 5, *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977). Prohibition was both proper and necessary, since the attorney was conducting court as a judge.

*rel. Crabtree v. Hash,* 180 W.Va. 425, 376 S.E.2d 631 (1988), is hereby denied.

WRIT DENIED.

McGRAW, Justice, in regard to my disqualification *in extenso:*

I file this note to explain my disqualification. At the outset of this matter, I moved the Court to give the Petitioners a hearing to show reasons for my disqualification. The Court refused to grant the Petitioners a hearing.

Our Constitution provides for the assignment of another Judge to serve in the place of a Justice who is temporarily disqualified or unable to serve. W.Va. Const. art. 8 § 2.

The rule enunciated in syllabus point 1 of *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984), and relied upon by the Court in this case, has evolved from the "rule of necessity", which requires a Judge to act in a proceeding in which he is otherwise disqualified by reason of a personal or pecuniary interest in the litigation and where there would be no disinterested alternative tribunal or Judge to hear and decide the case. *Hubby v. Carpenter,* 177 W.Va. 78, 350 S.E.2d 706 (1986); *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982); *Wagoner v. Gainer,* 167 W.Va. 139, 279 S.E.2d 636 (1981); *State ex rel. Brotherton v. Blankenship,* 157 W.Va. 100, 207 S.E.2d 421 (1973). Where the issue to be decided clearly affects the pecuniary interests or rights of every Judge who is otherwise qualified to hear and decide it, the rule of necessity is clearly applicable without resort to further factual development. *See DePond v. Gainer,* 177 W.Va. 173, 351 S.E.2d 358 (1986) (Miller, C.J., concurring); *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985); *In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402 (1984); *Wagoner v. Gainer, supra; State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978).

In all other cases, however, the determination of whether a Judge has a disqualifying interest in litigation is a matter incapable of precise definition and entirely dependent on the circumstances of the case.

*State ex rel. Bagley v. Blankenship,* 161 W.Va. at 642, 246 S.E.2d at 106; *Louk v. Haynes,* 159 W.Va. 482, 223 S.E.2d 780 (1976). In such an event, principles of due process clearly entitles the Petitioners to a hearing—the right to be heard on the facts prior to the application of the law.

This is a particularly critical issue in the Administration of Justice in West Virginia because Justices are elected as the result of partisan and political activity. In any instance, where a Justice is challenged, there should be a hearing to allow the challenger to develop the facts, as is the case with the procedure for the disqualification of Circuit Court Judges. T.C.R. XVII. Otherwise, due process is denied.