376 S.E.2d 631

**STATE of West Virginia ex rel. Paul CRABTREE, Administrative Director, W. Va. Supreme Court of Appeals, Petitioner,**

v.

**Joseph C. HASH, Jr., President, Jackson County Bar Association, Kennad L. Skeen, and the Jackson County Bar Association, etc., Respondents.**

**No. 17823.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

See also 180 W.Va. 428, 376 S.E.2d 634.

George Castelle, Charleston, for petitioner.

John D. Hoffman, PA, Ripley, for respondents.

---

McHUGH, Chief Justice:

This case is before the Court upon the petition for a writ of prohibition by Paul Crabtree, in his official capacity as administrative director of this Court,[1] to be directed against the respondents, Joseph C. Hash, President of the Jackson County Bar Association, Kennad L. Skeen and the Jackson County Bar Association. The petitioner contends that the respondents, Hash and the Jackson County Bar Association, violated *W.Va. Const.* art. VIII, § 3 when, among themselves, they elected respondent Skeen as Circuit Judge of Jackson County. The petitioner requests that this Court nullify the effect of any actions taken by the Association or Kennad Skeen. We agree and grant the writ.

The circuit judge of the Fifth Judicial Circuit (consisting of Calhoun, Jackson and Roane counties) retired from office. Respondents Hash and several members of the Jackson County Bar Association elected respondent Skeen special circuit judge, pursuant to *W.Va.Code*, 51–2–10 [1931]. Skeen conducted court for a day. Petitioner, the administrative director, filed a writ of prohibition against all respondents, alleging that *W.Va. Const.* art. VIII, § 3 vests with the Chief Justice of the Supreme Court of Appeals the exclusive power to appoint judges for temporary service.

## I

The statute at issue is *W.Va.Code*, 51–2–10 [1931], which states, in pertinent part:

> When, for any cause, the judge of a circuit court, criminal court, or other court of record of limited jurisdiction, shall fail to attend and hold the same, either at the commencement of the term, whether regular, adjourned or special, or at any time before its adjournment, or if he is in attendance and cannot properly preside at the trial of any cause therein, or if there is a vacancy in such court by reason of death or resignation, the attorneys present and practicing in such court may elect a judge by ballot to hold such

---

1. The petitioner no longer serves as the Court's administrative director, having retired and having been succeeded by Ted Philyaw.

court during the absence of the judge thereof, or for the trial of the cause in which such judge cannot preside, or, in case of a vacancy by death or resignation, for the remainder of the term, unless the vacancy is sooner filled.

*W. Va. Const.* art. VIII, § 3 states: "The [Supreme] court [of Appeals] shall have general supervisory control over all ... the courts. The chief justice shall be the administrative head of all courts. He may assign a judge ... from one circuit to another, ... for temporary service." *W. Va. Const.* art. VIII, § 8 states: "A retired justice or judge may ... be recalled by the chief justice of the supreme court of appeals for temporary assignment as a justice ... or judge...."

Art. VIII, § 8 also gives the Supreme Court inherent rule-making powers and "[w]hen rules herein authorized are prescribed, adopted and promulgated, they shall supersede all laws ... in conflict therewith, ..."

In *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977), this Court, pursuant to these constitutionally derived powers, adopted an administrative rule for the temporary assignment of circuit judges due to disqualification. The rule requires various procedures concerning notice to the Court and gives the Chief Justice the power to assign temporary circuit judges.[2] In syllabus point 2 of *Stern Bros.* the Court held that:

The administrative rule promulgated by the Supreme Court of Appeals of

West Virginia, setting out a procedure for the temporary assignment of a circuit judge in the event of a disqualification of a particular circuit judge, operates to supersede the existing statutory provisions found in W.Va. Code, 51–2–9 and –10 and W.Va. Code, 56–9–2, insofar as such provisions relate to the selection of special judges and to the assignment of a case to another circuit judge when a particular circuit judge is disqualified.

The respondents contend that syllabus point 2 of *Stern Bros.* states that the administrative rule *only* supersedes *Code,* 51–2–10 when there is a "disqualification" due to conflict of interest. Conflict of interest was the underlying reason for the judge's disqualification in the facts of *Stern Bros. Cf.* "It is to be understood that in formulating the administrative rule in Appendix A, it is not possible to anticipate every situation that may arise on a disqualification motion." *Id.* 160 W.Va. at 579, 236 S.E.2d at 229. Therefore, they contend that the vacancy created in their circuit was due to retirement, which was not envisioned in the administrative rule concerning "disqualification" in *Stern Bros.,* but, it is envisioned in *Code,* 51–2–10, which expressly includes "death or resignation." They further contend that *Stern Bros.* does not apply, and they acted properly when they conducted the election. Neither party has addressed the constitutional status of *Code,* 51–2–10, regardless of the ruling in *Stern Bros.*[3]

---

**2.** The rule in *Stern Bros.* was intended to broaden a prior administrative rule that permitted the Chief Justice to appoint a judge for temporary service when the sitting judge is disqualified "for any reason." *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 572 n. 3, 236 S.E.2d 222, 225–26 n. 3 (1977). The new administrative rule adopted in *Stern Bros.* was intended to broaden the procedural safeguards of the old rule, not limit its application:

The existing administrative rule dealt only with the procedure to be followed in the appointment of a temporary judge where a circuit judge was disqualified. It did not involve the further problem of how a motion for disqualification should be handled. In order to provide guidelines in this latter area, this Court has concluded that it is appropriate to promulgate a new administrative rule which covers not only the selection of a temporary

judge, but establishes guidelines for handling motions for disqualification.
*Stern Bros.,* 160 W.Va. at 578, 236 S.E.2d at 228.

**3.** *W.Va. Const.* art. VIII, governing the judiciary, has only been amended twice in the State's history, in 1880 and 1974. Prior to 1974, the Supreme Court of Appeals had no constitutionally derived administrative authority over the lower tribunals of the State. Instead, the legislature had substantial authority, including the power to create laws concerning special judges. *W.Va. Const.* art. VIII, § 15 (repealed) stated: "The legislature shall provide by law for holding regular and special terms of the circuit courts, where from any cause the judge shall fail to attend, or, if in attendance, cannot properly preside."

The upshot of this authority was *W.Va.Code,* 51–2–10 [1931]. *State ex rel. Black v. Penny-*

We need not engage in the semantics of statutory construction to determine whether the encompassing term of "disqualification" includes retirement. *See* "disqualify," *Random House Dictionary of the English Language* 569 (2d ed. 1983): "to deprive of qualification or fitness; render unfit; incapacitate [or] to deprive of legal, official, or other rights or privileges; declare ineligible or unqualified." Instead, we hold that *W.Va. Const.* art. VIII, §§ 3 and 8, and all administrative rules made pursuant to the powers derived from article VIII, supersede *W.Va.Code,* 51–2–10 [1931] and vest the Chief Justice of the Supreme Court of Appeals with the sole power to appoint a judge for temporary service in any situation which requires such an appointment.

The reason for the administrative rule adopted in *Stern Bros.* "rests on the premise that a judicial officer must be shown to have been properly selected. It is part of a larger rule which conceives that the cornerstone of any judicial system rests upon the integrity of its judges." *Stern Bros. Inc. v. McClure,* 160 W.Va. 567, 576, 236 S.E.2d 222, 228 (1977).

Any election conducted pursuant to *W.Va.Code,* 51–2–10 [1931] is void as the constitutional power to assign judges for temporary service rests with the Chief Justice of the West Virginia Supreme Court of Appeals. Further, "[o]rders of a special judge who has not met the constitutional prerequisites for holding that office are

void." Syl. pt. 5, *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977).

WRIT GRANTED.

---

backer, 144 W.Va. 612, 110 S.E.2d 265 (1959); *Brown v. Miller,* 103 W.Va. 282, 137 S.E. 227 (1927). By virtue of former art. VIII, § 15, this Court had no constitutional authority to act in such matters. *State ex rel. Lunsford v. Weber,* 153 W.Va. 544, 547, 170 S.E.2d 671, 673 (1969).

However, as a result of the Judicial Reorganization Amendment of 1974, the legislature was divested of all administrative powers over state court judges. No provision similar to former art. VIII, § 15 exists. Instead, this Court was given "general supervisory control over all intermediate appellate courts, circuit courts and magistrate courts," and the Chief Justice, as "administrative head of all the courts," was specifically given the power of temporary assignment of circuit judges. *W.Va. Const.* art. VIII, § 3.

"[T]he Legislature has plenary power to act unless prohibited from doing so by the constitu-

tion itself." *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 168, 279 S.E.2d 622, 631 (1981). The legislature no longer maintains the power of art. VIII, § 15 (repealed), and the 1974 amendment to article VIII specifically vests the power of temporary assignment with the Chief Justice. Therefore, the old statute appears to be effectively void, as it violates the separation of powers contained in *W.Va. Const.* art. V, § 1. Interestingly, in *Brown v. Miller,* 103 W.Va. 282, 285, 137 S.E. 227, 228 (1927), the Court refused to consider a method of selecting a circuit judge that was not in conformity with *Code,* 51–2–10. In doing so, the Court, relying on art. VIII, § 15 (repealed) stated, "[w]here the constitution, as here, prescribes a mode of selection of a substitute or special judge, it excludes other modes of selection."