408 S.E.2d 659

**STATE of West Virginia ex rel. Lawrence REDMAN, Jr., Petitioner Below, Appellant,**

v.

**Jerry C. HEDRICK, Warden, West Virginia Penitentiary, Respondent Below, Appellee.**

**No. 19510.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 5, 1991.

Decided July 25, 1991.

---

**711**

Richard G. Gay, Berkeley Springs, for appellant.

Diana Cook Risavi, Berkeley County Prosecutor's Office Martinsburg and Joanna I. Tabit, Deputy Atty. Gen., Appellate Div., Charleston, for appellee.

McHUGH, Justice:

This case is before the Court upon the appeal of Lawrence E. Redman, Jr., the relator below, from the May 4, 1989 order of the Circuit Court of Berkeley County, which denied a petition for a writ of habeas corpus. The appellee is Jerry C. Hedrick, Warden of the West Virginia Penitentiary.

Based upon our review of the record in this case, we affirm the judgment of the circuit court, in part, and remand this case with directions.

## I. FACTS

The appellant was charged with the murder of Albert Minnich. The murder occurred on September 26, 1984, in Martinsburg. At the time, the appellant was seventeen years old.

The appellant confessed to committing the murder to Martinsburg police on the day of the murder. No attorney was present at the time of the appellant's confession.

David H. Sanders was appointed to represent the appellant. At the time of this appointment, Sanders worked in the public defender's office in Berkeley County. Initially, the State was represented by Patrick Henry, an assistant prosecuting attorney for Berkeley County.

The Berkeley County Magistrate Court found probable cause to believe that the appellant committed the offense as charged, and ordered that the appellant be detained at a juvenile center in Princeton.

The State was successful in transferring the case from juvenile status to adult status. The circuit court's October 26, 1984 order, waiving prosecution of this matter from juvenile court, was appealed to this Court. It is not clear from the record as to when the appeal was actually filed. *See infra* note 3.

In the meantime, the appellant was indicted on February 20, 1985. Judge Patrick Henry, who had become a circuit judge on January 1, 1985, presided over the grand jury proceeding which resulted in the appellant's indictment.

On February 21, 1985, Sanders, the appellant's attorney, moved for a continuance so that psychiatric examinations of the appellant could be prepared. The appellant

was not present at this proceeding because he was detained at the juvenile center in Princeton. On May 13, 1985, the circuit court entered an order continuing the case to the May, 1985 term, which began on May 21, 1985. This proceeding was also before Judge Henry. On May 23, 1985, Sanders appeared before the circuit court where it was noted by the circuit court that the appeal to this Court of the waiver of jurisdiction from juvenile to adult status was still pending.

On September 3, 1985, Sanders made a motion that the appellant be moved from incarceration in Princeton to a regional detention center in Martinsburg. The appellant was not present at this proceeding as well. The circuit court, Judge Henry presiding again, granted the appellant's motion on September 12, 1985.

On October 8, 1985, this Court denied the appeal of the waiver of juvenile jurisdiction.

On October 17, 1985, the circuit court, Judge Henry presiding, set the case for trial on February 4, 1986, to be tried before Judge Thomas Steptoe. Judge Henry refused to rule on any bond-setting motions because he feared that he could not be neutral in this regard. Judge Henry also noted that his role in this case was for *administrative purposes* only. It was also noted at this proceeding that the appellant's attorney, Sanders, desired to petition this Court to reconsider its previous decision denying the appeal of the waiver of juvenile jurisdiction.

On October 23, 1985, the circuit court, Judge Henry presiding, granted the public defender's motion to withdraw as counsel for the appellant, but with Sanders remaining as appointed counsel.

On November 8, 1985, the circuit court, Judge Steptoe presiding, entered an order which noted that thirty days had elapsed since this Court denied the appeal of the waiver of juvenile jurisdiction, and that no petition for reconsideration was filed. Therefore, it was ordered that the appellant be moved from the regional detention center in Martinsburg and sent to the Berkeley County Jail.

Sanders filed a motion to suppress the appellant's confession, but this motion was not ruled upon, because, on February 3, 1986, the day before the trial was scheduled, the appellant pled guilty to first degree murder in the circuit court, before Judge Steptoe. The court ordered that a presentence investigation report, including a victim impact statement, be filed, and that sentencing would be on June 9, 1986.

On April 21, 1986, the circuit court entered an order continuing the sentencing hearing to July 18, 1986. On that day, July 18, 1986, the appellant moved to withdraw his guilty plea. The circuit court denied this motion and rescheduled the sentencing hearing for November 21, 1986.

A sentencing hearing was held on November 21, 1986, and the appellant was sentenced to life without mercy.

The appellant raises several assignments of error before this Court, including, that he was denied the right to be present at all critical stages of the criminal proceedings, that he received ineffective assistance of counsel and that he was prejudiced by Judge Henry, the former assistant prosecutor, presiding over part of the proceedings in this case. Although this case will be remanded for further hearings on certain matters relating to ineffective assistance of counsel and Judge Henry presiding over the grand jury proceeding, we address the other assignments of error because they might be raised again depending upon the result of the case on remand.

## II.  RIGHT TO BE PRESENT AT ALL CRITICAL STAGES

The initial assignment of error raised by the appellant is that he was denied his right to be present at all critical stages of the proceedings in this case.

Specifically, the appellant points to the February 21, 1985 hearing, wherein a continuance was granted, and the September 3, 1985 hearing, wherein the appellant's motion to be moved from incarceration in Princeton to a regional detention center in Martinsburg was granted.

The right of a criminal defendant to be present at every critical stage of the proceedings against him or her has a foundation in common, statutory, and constitutional law. Syl. pt. 2, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).

■ In recognizing the constitutional right of a defendant to be present at all critical stages of a criminal proceeding, this Court has held: "The defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at *all* critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syl. pt. 6, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977) (emphasis supplied).[1]

The statutory basis for this right is contained in *W.Va.Code*, 62-3-2 [1931]. That statute provides, in part: "A person indicted for felony shall be personally present during the trial therefor."

"The right of an accused to be present at every stage of a criminal trial is also protected by *W.Va.R.Crim.P.* 43." *State v. Barker*, 176 W.Va. 553, 556, 346 S.E.2d 344, 347 (1986). *W.Va.R.Crim.P.* 43 provides, in pertinent part:

**Rule 43. Presence of the Defendant.** (a) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

. . . .

(c) *Presence Not Required.* A defendant *need not be present* in the following situations:

. . . .

(2) In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, *with the written consent of the defendant,* may permit arraignment, plea, trial and imposition of sentence in the defendant's absence.

(emphasis supplied)

The circuit court concluded that even if the appellant would have been present at the February 21, 1985, and September 3, 1985 hearings, this objection was waived by the appellant because he eventually entered a voluntary guilty plea. The appellant contends that the circuit court committed error by concluding that the voluntary guilty plea constituted a waiver in this case.

Regardless of whether or not the plea of guilty constituted a waiver, our review of the record indicates that the appellant was not prejudiced by his absence at the two hearings in question. Therefore, no reversible error was committed.

■ In *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975), this Court disapproved a line of cases which held that prejudice is not a necessary element for reversal of a criminal conviction where the defendant was absent, even during a critical stage.

If an accused demonstrates that his right to confront his accusers was abridged by the State or *that he was absent during a critical stage of the trial proceeding,* his conviction of a felony will be reversed *where a possibility of prejudice appears* from the abrogation of the constitutional or statutory right.

*Id.,* syl. pt. 8 (emphasis supplied).[2] Consequently, the possibility of prejudice to the

---

**1.** *W.Va. Const.* art. III, § 14 provides:

Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the

accusation, *and be confronted with the witness against him,* and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.
(emphasis supplied)

**2.** Although syllabus point 8 of *Grob* refers to the *trial* proceeding, the text thereof indicates that the Court intended to extend the right of pres-

criminal defendant is necessary in order to reverse a conviction where the defendant was absent during a critical stage of the proceedings.

█ The appellant relies upon this Court's holding in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), wherein we stated: *"Because of the impact of the right to a speedy trial*, matters surrounding a continuance should require the presence of the defendant."* 160 W.Va. at 246, 233 S.E.2d at 719 (emphasis supplied). *See* 2 F. Cleckley, *Handbook on West Virginia Criminal Procedure*, at II–68 (1984).

However, in *Boyd*, as noted by the above-quoted passage, our concern was with the implications of the right to a speedy trial.

In this case, the appellant's right to a speedy trial is not implicated. Rather, as set forth in the facts of this opinion, *see supra* section I, the appellant had appealed the waiver of jurisdiction from juvenile status to adult status.[3] That appeal was not denied by this Court until October 8, 1985. Accordingly, in any event, the appellant could not be tried until that issue had been settled.

Moreover, the September 3, 1985 hearing, wherein the appellant's motion to be moved from the southern to the northern part of the state, occurred during the same interim, which was prior to this Court denying the appeal of the waiver of jurisdiction.

Consequently, neither proceeding at which the appellant was absent delayed the appellant's trial, and therefore, neither had any prejudicial bearing on the outcome of when he would eventually be tried.

Furthermore, in *Boyd*, the Court went on to apply the test enunciated in *Grob*, that is, that even if the defendant's absence is at a critical stage, a harmless error inquiry must be made.

> [T]he critical stage requirement is, as noted in *Grob*, subject to the harmless error test. Consequently, there are two defenses available [to the prosecution] when it is claimed that the accused's absence creates reversible error. The first is that the absence occurred at a non-critical stage of the criminal proceeding. The second is that *even if at a critical stage, it was harmless error.*

*Boyd*, 160 W.Va. at 247, 233 S.E.2d at 719 (emphasis supplied).

As stated, it is clear from the record that no prejudice occurred to the appellant by his absence at the two hearings at issue. Both motions, one, to continue the proceedings in order to allow time to have psychiatric examinations performed, and the other, to transfer the appellant to the vicinity of the criminal proceedings, were granted. Neither of these motions was prejudicial to the appellant. Therefore, no reversible error was committed in this regard.

Accordingly, we reiterate the principle that in a criminal proceeding, the defendant's absence at a critical stage of such proceeding is not reversible error where no possibility of prejudice to the defendant occurs.[4]

---

ence to *any* criminal proceeding. *Grob*, 158 W.Va. at 661, 214 S.E.2d at 338. We noted this discrepancy in *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977): "[I]t is now reaffirmed that the right of the accused to be present follows *any* critical stage in the criminal proceeding." *Id.* 160 W.Va. at 246, 233 S.E.2d at 718 (emphasis supplied).

In syllabus point 6 to *Grob*, we stated our disapproval of previous cases which did not require prejudice in order to reverse a criminal conviction where the defendant was not present at a critical stage. There we held:

> Insofar as the decisions of *State v. Vance*, 146 W.Va. 925, 124 S.E.2d 252 (1962) and its progenitors held that prejudice is not a necessary element for reversal of a felony conviction where the defendant was absent during a

trial occurrence in which anything was done affecting him, such cases are disapproved.

**3.** It is not clear from the record as to when the appeal from the waiver of jurisdiction was actually filed. Adding to the lack of clarity in this regard is trial counsel's indication to the circuit court at the February 21, 1985 hearing that he had no intention to appeal the waiver of jurisdiction. The record in this case does not contain a petition for such an appeal. However, it *is* clear that an appeal was pursued. This Court's October 8, 1985 order denying such is in the record.

**4.** Under this assignment of error, the appellant also contends that because the hearing with respect to the continuance in this case constitut-

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The appellant also contends that his trial counsel, Sanders, was ineffective. Specifically, the appellant focuses on trial counsel's alleged failure to: negotiate a plea agreement; pursue suppression of the appellant's confession; raise a defense of insanity; remove Judge Henry from presiding over some parts of the proceeding; and connect the appellant's intoxication to "intent."

■ The standard for deciding whether counsel's performance is ineffective is set forth in syllabus point 21 to *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974): "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

Our review of the record indicates that this was a particularly difficult case to defend, and the record reveals that trial counsel's performance was, for the most part, adequate under the *Thomas* standard. However, the record before this Court, in certain critical areas, is not adequate to determine whether trial counsel for the appellant was ineffective.

Specifically, we are concerned with the absence of a psychologist's report which was relied upon by trial counsel in advising the appellant to voluntarily plead guilty instead of going to trial.

The testimony of trial counsel at the habeas corpus proceeding indicates that trial counsel's recommendation that the appellant plead guilty was based upon: the *possibility* of a lighter sentence; the appellant's confession; and the overwhelming evidence against the appellant in other respects, such as a psychologist's report and the circumstances of the crime.

During the hearing at which the appellant entered a guilty plea, the court questioned the appellant extensively on the effectiveness of trial counsel's representation.

At the sentencing hearing, the court noted that, based upon the presentence report, mercy was not warranted due to the brutal nature of the crime as well as the appellant's history of violence. The facts set forth in the presentence report indicate that the defendant stabbed the victim twelve times in the head, chest, abdomen, and arms, while a cohort acted as a "lookout." The presentence report also indicated that the appellant's previous history with law enforcement included a charge of malicious assault and several violations of probation resulting therefrom.

The record also indicates that trial counsel did attempt to make a plea agreement on behalf of the appellant, whereby the appellant would plead guilty to the charge in the indictment, and would receive mercy, but the prosecutor represented that the

ed reversible error due to the appellant's absence, a violation of the "three-term rule" occurred. Specifically, that rule refers to *W.Va. Code,* 62–3–21 [1959], which provides, in part:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, *unless the failure to try him was caused by ... a continuance granted on the motion of the accused*[.] (emphasis supplied)

However, as we have held herein, the appellant was not prejudiced by his absence from the continuance hearing. In any event, there appears to be no violation of the "three-term rule."

The appellant was indicted in the February, 1985 term of court, specifically, February 20, 1985. However, the day after the indictment was returned, the appellant was granted a continuance. During the May, 1985 term, the circuit court noted that the appeal to this Court of the waiver of jurisdiction from juvenile to adult status was still pending. During the October, 1985 term, following denial by this Court of the appeal of waiver of jurisdiction, trial was set for February 4, 1986, which was still part of the October, 1985 term of court. On February 3, 1986, however, the appellant pled guilty. Therefore, only two terms of court passed between the time the appellant was indicted and the eventual guilty plea.

State would not take part in an agreement of any kind.[5]

However, the record is also clear that trial counsel, in advising the appellant to plead guilty without pursuing further whether the appellant was competent to stand trial, placed great weight on the report of Dr. Stone, a psychologist. Apparently, Dr. Stone's report concluded that not only was the appellant competent to stand trial, but the appellant was also criminally responsible for his actions. The circuit court, in its order denying the appellant habeas corpus relief, noted that it was on the basis of Dr. Stone's conclusions that trial counsel opted to not pursue the competency issue further. Specifically, the circuit court stated:

Attorney Sanders had the Petitioner evaluated by a potential expert witness in the field of psychiatry and/or psychology in order to determine whether such a course of action should be taken. This expert being one Dr. Leroy Stone, concluded not only that the Petitioner was competent to stand trial but was also criminally responsible. On the basis of this diagnosis, Attorney Sanders did not pursue the competency to stand trial issue further.

However, it is not clear that the report of Dr. Stone was even before the circuit court. It would be difficult for this Court or the circuit court to determine whether trial counsel's decision in this regard was sound without reviewing the contents of that report. Ultimately, the soundness of trial counsel's decision in this regard goes to the issue of whether trial counsel's representation of the appellant was effective.

The appellant's competency would also have a bearing on whether the appellant would have prevailed on the motion to suppress the confession in light of the fact that no attorney was present. As stated in section I herein, trial counsel made a mo-

tion to suppress the appellant's confession, but before any ruling was made, the appellant had entered a plea of guilty. It is possible that such motion would have been granted, but the circuit court was not ultimately confronted with that question.[6]

The presentence report, which *is* included in the record, indicates that the appellant suffered through a very difficult childhood and family life. This report states that the appellant was neglected, abused, and exposed to alcohol and drugs on a frequent basis. The report further states that the appellant was expelled from his home by his father when he was only thirteen years old.

It is possible that the appellant's mental competency is directly related to the circumstances of his early years. However, it is just as possible that his earlier years had no bearing on his ability to appreciate criminal conduct. In any event, the report of the psychologist is necessary before a judgment can be made with respect to whether trial counsel properly relied upon this report in advising the appellant to enter a plea of guilty.

The critical nature of the psychologist's report becomes all the more evident where a defendant, such as in this case, who was a juvenile at the time of the alleged crime, has received a sentence of life imprisonment with no mercy. *Cf. Schofield v. West Virginia Dept. of Corrections*, 185 W.Va. 199, 406 S.E.2d 425 (1991) (affirming trial court's decision in habeas corpus proceeding that trial counsel's failure to introduce evidence of defendant's limited mental ability was "technically ineffective" where defendant received life without mercy for first degree murder); *State v. Schofield*, 175 W.Va. 99, 331 S.E.2d 829 (1985) (addressing trial counsel's delay in seeking mental examination).

Accordingly, we remand this case to the circuit court so that it may conduct a more

---

5. Even if a plea agreement would have been proffered, the trial court was not under any obligation to accept such agreement. *See W.Va. R.Crim.P.* 11(e)(3) and (4).

6. Appellate counsel supports the contention that the appellant would have prevailed on this mo-

tion because the appellant was a juvenile when he confessed to committing the crime. *See* syl. pt. 2, *State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d 199 (1981) (a juvenile may not, *per se,* knowingly and intelligently self-incriminate).

extensive inquiry into the circumstances surrounding the appellant's entry of a guilty plea as well as the appellant's confession. This inquiry should include a review of the psychologist's report so that a determination may be made as to whether the appellant, given the circumstances of this case, would have been competent to stand trial and whether he was criminally responsible at the time of the offense.[7]

## IV. JUDGE HENRY PRESIDING OVER SOME PROCEEDINGS

Finally, the appellant contends that reversible error was committed by Judge Henry presiding over some of the proceedings in the lower court.

Primarily, the appellant relies upon Canon 3 of the *Judicial Code of Ethics.* The pertinent part of that canon provides:

C. Disqualification

(1) A judge should disqualify himself in a proceeding *in which his impartiality might reasonably be questioned,* including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) *he served as lawyer in the matter in controversy,* or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the

judge or such lawyer has been a material witness concerning it[.]

(emphasis supplied) [8]

The appellant maintains that because Judge Henry was an assistant prosecutor at the initial stages of this proceeding, then he should have been disqualified from presiding over this matter as a judge in *any* capacity.

As gleaned from the facts in this case, *see supra* section I, Judge Henry's involvement as a judge was limited to six specific instances, as follows: (1) February, 1985, presided over grand jury which indicted appellant; (2) February 21, 1985, granted a continuance; (3) May 23, 1985, informed by appellant's attorney, Sanders, that this Court (Supreme Court) had not yet ruled upon appeal of waiver of juvenile jurisdiction; (4) September 3, 1985, granted motion to move appellant from southern to northern part of state; (5) October 17, 1985, set a trial date; (6) October 23, 1985, granted motion to withdraw the public defender's office and appoint Sanders, personally, to the appellant's case.[9]

In the October 17, 1985 order, which set a trial date, Judge Henry noted that his involvement in this case was merely for administrative purposes. Furthermore, Judge Henry noted that his refusal to set bond was based upon a concern that he could not be neutral in this regard.

■ Importantly, the appellant fails to demonstrate specifically the prejudice he

---

**7.** As for the appellant's contention that counsel was ineffective by not attempting to remove Judge Henry from presiding over *some* of the proceedings, as we hold in section IV herein, the appellant was not prejudiced by such proceedings.

The appellant also points out that trial counsel was inexperienced and did not have much exposure to felony cases. The appellant also asserts that trial counsel spent a total of only four hours with the appellant. Neither of these assertions is supported by the record.

**8.** The *Commentary* to this provision states, in part: "[A] judge formerly employed by a governmental agency ... should disqualify himself in a proceeding *if his impartiality might reasonably be questioned* because of such association." (emphasis supplied)

**9.** The cases cited by the appellant with respect to this assignment of error are distinguishable from the facts in this case. For example, the appellant relies upon syllabus point 5 to *State ex rel. Hamstead v. Dostert,* 173 W.Va. 133, 313 S.E.2d 409 (1984), where we held that where a *judge* is the *moving* party to disqualify a prosecutor, then the judge should disqualify himself or herself under Canon 3 of the *Judicial Code of Ethics.* Obviously, that is not what happened in this case.

Most of Judge Henry's participation in this case, as a judge, was limited to administrative matters. *Cf.* syl. pt. 2, *State ex rel. Hash v. McGraw,* 180 W.Va. 428, 376 S.E.2d 634 (1988) (administrative actions of chief justice of state supreme court do not necessarily represent improper interest that would render chief justice impartial or incapable of hearing case).

claims to have suffered from Judge Henry taking part in some of the administrative matters in this case.[10] Rather, the appellant merely asserts that he was prejudiced by the *appearance* of Judge Henry presiding over limited aspects of the case. Once it became clear to Judge Henry that his role in this case may involve rulings that addressed the merits of the case, he properly reserved such matters for Judge Steptoe. Therefore, no reversible error was committed in this regard.

Obviously, Judge Henry merely entered orders which moved the case along for disposition. However, the one instance that is of more concern to this Court is Judge Henry presiding over the grand jury which indicted the appellant.

In a case that does not involve a fundamental error in the grand jury proceeding, "the rule is that dismissal of an indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *State ex rel. Starr v. Halbritter*, 183 W.Va. 350, 353, 395 S.E.2d 773, 776 (1990). *See* syl. pt. 6, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228, 238 (1988).

The record of the grand jury proceeding in this case is not a part of the record before this Court. Consequently, we cannot determine whether Judge Henry presiding over such proceeding influenced the grand jury's decision to indict or even if there is grave doubt that Judge Henry presiding substantially influenced the decision to indict.

Accordingly, we must remand this case on this point as well, so that the record of the grand jury proceeding is made a part of the entire record in this case. The circuit court may then determine whether the appellant was prejudiced by Judge Henry presiding over the grand jury proceeding.

 Where a prosecutor in a criminal case becomes the presiding judge over the grand jury that ultimately indicts the defendant in such case, the record of the grand jury proceeding must be made a part of the record before this Court will determine whether prejudice has resulted therefrom. *See also* syl., *Arbogast v. Randolph County CSC*, 172 W.Va. 609, 309 S.E.2d 108 (1983) (when litigants present record from which it is impossible to determine facts necessary for decision, court will remand for further development of record).

## V. CONCLUSION

Consistent with the foregoing, the judgment of the Circuit Court of Berkeley County is affirmed, in part, and this case is remanded to that court with directions.

Affirmed, in part; remanded with directions.

---

**10.** All of the motions by the appellant before Judge Henry were *granted.*