OPINION OF THE COURT
Per Curiam.
The issue presented is whether Chief Judge Kaye[1] and Judges Smith, Levine, Ciparick and Wesley, named as parties in this CPLR article 78 proceeding brought to invalidate an administrative order of the Court, should be disqualified from participating in the decision of petitioners’ motion for leave to appeal from an order affirming the dismissal of the proceeding.[2]
In 1995, the Legislature reinstated the death penalty. In connection therewith, it enacted Judiciary Law § 35-b, which provides a vehicle to afford legal representation to indigent capital defendants through a Capital Defender Office and court appointed individual attorneys. On November 21, 1996, pursuant to article VI, § 30 of the New York Constitution and Judiciary Law § 35-b, the Court of Appeals issued orders approving the fee schedules for capital counsel. By order dated December 16, 1998, the Court of Appeals approved a reduced capital counsel fee.
In April 1999, petitioners, four individual attorneys certified to accept capital cases and the New York State Association of Criminal Defense Lawyers, on behalf of its members so certified, commenced a CPLR article 78 proceeding seeking to annul the order approving the reduction in fees. The petition *559 named as respondents Chief Judge Kaye, former Judge Bellacosa, and Judges Smith, Levine, Ciparick and Wesley, the six Judges who comprised the Court of Appeals when the December 16, 1998 order was issued. The Judges were sued “as Chief Judge and Associate Judges of the New York Court of Appeals, acting in their administrative capacity.” Petitioners claimed that the Judges acted beyond their authority when revising the rates in the First Department, and that the reduced fee schedule for all Departments did not meet the standards of Judiciary Law § 35-b for adequate compensation. The Attorney General filed an answer asserting that petitioners lacked standing to maintain the proceeding and that the petition failed to state a cause of action.
Supreme Court determined that petitioners had standing but, on the merits, concluded that petitioners failed to satisfy their burden of establishing that the December 16, 1998 order was made in violation of lawful procedure, or was affected by an error of law, or was unreasonable or irrational or was an abuse of discretion. The Appellate Division unanimously affirmed solely on the ground that petitioners lacked standing to challenge the revised fee schedule. The Appellate Division subsequently denied petitioners’ motion for leave to appeal to this Court. Petitioners have moved in this Court for leave to appeal from the Appellate Division order of affirmance. By separate motion, they seek to disqualify Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley from participating in the Court’s determination of the motion for leave to appeal.
Petitioners contend that disqualification is required by Judiciary Law § 14 and a parallel provision of the New York Code of Judicial Conduct (Canon 3 [C] [1] [d] [i]), both of which provide that a Judge is disqualified from participating in any matter in which the Judge is a party. Petitioners further argue that the Rule of Necessity does not apply because the Court of Appeals may designate substitutes to sit in the place of the respondent Judges. While petitioners assert that as “parties” the respondent Judges are disqualified automatically, the fundamental issue presented is whether this Court’s approval of the subject fee reduction by administrative order requires disqualification. For institutional reasons, we conclude that the Court’s exercise of its dual responsibilities as administrator and adjudicator does not require or warrant disqualification. The Rule of Necessity compels participation by the respondent Judges.
This Court has exclusive jurisdiction under the Constitution and the CPLR to entertain petitioners’ motion for leave to ap *560 peal (NY Const, art VI, § 3 [b]; CPLR 5602). No other judicial body exists to which the motion for leave to appeal could be referred for disposition. Petitioners acknowledge this, but assert that the Court could designate substitutes to hear this matter. Although the Constitution provides for substitution of Judges of this Court who choose to recuse or are disqualified (NY Const, art VI, § 2), the designation of substitute Judges is not appropriate here.
The Court of Appeals has a unique role and responsibility in State government. It is the court of last resort from which no appeal lies on questions of New York law (see, NY Const, art VI, §§ 2, 3). Furthermore, under our State constitutional system, the Court of Appeals decides the scope of its own power and authority. If disqualification were required whenever the Judges were sued as individuals upon a challenge to an act of the Court, the result could be substitution of the entire constitutionally appointed court, leaving “the most fundamental questions about the Court and its powers to persons whose selection and retention are not tested by constitutional processes” (In re Vermont Supreme Ct. Admin. Directive No. 17 v Vermont Supreme Ct., 154 Vt 217, 226, 576 A2d 127, 132).
The Court also has primary responsibility for the administration of the judicial branch of government, and some administrative rule-making powers are vested exclusively in the Court of Appeals (see, NY Const, art VI, §§ 28, 30). Thus, disqualifying the Judges of this Court each time their administrative powers are challenged would “render the rule-making process self-defeating and nugatory” (Berberian v Kane, 425 A2d 527, 528 [RI]). In each instance, the ultimate determination regarding an administrative order promulgated by this Court would be rendered by a Bench comprised of substitute jurists. Moreover, substitution of other Judges for this Court under these circumstances would “subject the judicial system to an inordinate amount of delays and inefficiency” (State ex rel. Hash v McGraw, 180 W Va 428, 432, 376 SE2d 634, 638). It would also “put power in the hands of litigants to frustrate our judicial system” (Cameron v Greenhill, 582 SW2d 775, 776 [Tx], cert denied 444 US 868) by allowing them “a circuitous appeal from this court as regularly constituted to this same court as specially constituted” (Ex parte Farley, 570 SW2d 617, 623 [Ky]).
The adoption of the rule in question by the Judges of this Court acting in their administrative capacity does not preclude them from deciding, in their adjudicatory capacity, a subse *561 quent case challenging the validity of the rule. The exercise of the Court’s rule-making power “does not carry with it a decision that the amended rules are all constitutional. For such a decision would be the equivalent of an advisory opinion which * * * we are without constitutional power to give” (Statement Accompanying Amendments to the Federal Rules of Civil Procedure, 383 US 1031, 1032 [Black, J., dissenting]). “The fact is that our promulgation of the [rule] is not a prior determination that it is valid and constitutional. That determination must await the adjudication in this or a future case” (In re Vermont Supreme Ct. Admin. Directive No. 17 v Vermont Supreme Ct., supra, 154 Vt, at 223, 576 A2d, at 130). To the extent that a decision in this article 78 proceeding may involve reevaluation by this Court of limited aspects of its own prior determination, this Court may reconsider its own decision (see, Matter of Rules of Ct. of Appeals for Admission of Attorneys & Counselors at Law, 29 NY2d 653 [Judges of this Court decided application for reconsideration of administrative order they participated in adopting]; see also, Ex parte Farley, supra [comparing review of administrative determination to motion for new trial or petition for rehearing]; Board of Overseers of Bar v Lee, 422 A2d 998, appeal dismissed 450 US 1036 [Me] [comparing challenge to constitutionality of rule to reconsideration in a litigated case of issue decided in Judge’s prior advisory opinion]).
Finally, we reject petitioners’ arguments for a mechanical application of Judiciary Law § 14 and the Code of Judicial Conduct. The respondent Judges of this Court are not disqualified automatically merely because they are named parties. “A judge cannot be disqualified merely because a litigant sues or threatens to sue him or her. We cannot encourage such an easy method of disqualification” (In re Vermont Supreme Ct. Admin. Directive No. 17 v Vermont Supreme Ct., supra, 154 Vt, at 226, 576 A2d, at 132 [emphasis in original]). Rather, the nature of the conflict posed by acting as both Judge and party in the particular case, and the efficacy of replacing the Judges, must be considered (see, Ex parte Farley, supra; State ex rel. Hash v McGraw, supra; In re Vermont Supreme Ct. Admin. Directive No. 17 v Vermont Supreme Ct., supra; Cameron v Greenhill, supra).
The respondent Judges are named as parties only in their administrative capacity. Petitioners seek only to invalidate a Court order. The respondent Judges have no pecuniary or personal interest in this matter and petitioners allege none. Nor do petitioners allege personal bias or prejudice. No *562 traditionally recognized basis for conflict exists here. The Court’s “dual responsibilities of diligent administration and impartial adjudication do not create a conflict requiring disqualification” (State ex rel. Hash v McGraw, supra, 180 W Va, at 431, 376 SE2d, at 637).
For the foregoing reasons, we conclude that the Rule of Necessity requires participation by the respondent Judges in this case. The constitutional provision for the designation of substitute Judges is not to be used as a vehicle to force removal of the constitutionally appointed members of this Court by naming them as parties when challenging administrative actions of the Court.
Our denial of this disqualification motion accords with decisions of the high courts of other states (see, Office of State Ct. Adm’r, Colo. Judicial Dept. v Background Information Servs., 994 P2d 420 [Colo]; Ex parte Farley, supra; Board of Overseers of Bar v Lee, supra; Berberian v Kane, supra; Cameron v Greenhill, supra; In re Vermont Supreme Ct. Admin. Directive No. 17 v Vermont Supreme Ct., supra; State ex rel. Hash v McGraw, supra; see also, Mississippi Pub. Corp. v Murphree, 326 US 438; accord, Buschbacher v Supreme Ct. of Ohio, US Dist Ct, SD Ohio, 1976, No. C-2-75-743, 75-751, 76-309, affd sub nom. Cuyahoga County Bar Assn. v Supreme Ct. of Ohio, 430 US 901; Palmer v Jackson, 617 F2d 424 [5th Cir]; Ables v Fones, 587 F2d 850 [6th Cir]).
Accordingly, the motion, insofar as it seeks disqualification of the Chief Judge, should be dismissed as academic; the motion, insofar as it seeks disqualification of Judges Smith, Levine, Ciparick and Wesley, should be denied.
Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur in Per Curiam opinion; Chief Judge Kaye taking no part.
Motion, insofar as it seeks disqualification of Chief Judge Kaye, dismissed as academic; motion, insofar as it seeks disqualification of Judges Smith, Levine, Ciparick and Wesley, denied.

. The Chief Judge has recused herself. Thus, petitioners’ motion as to her should be dismissed as academic.
It is not an uncommon practice for the Chief Judge alone to be recused in similar appeals involving judicial administration (see, e.g., Maresca v Cuomo, 64 NY2d 242, 247, n 1).

. The motion at bar is labeled as one for recusal. Because it is statutorily based, however, it is appropriately treated as a motion for disqualification raising an issue of law for decision by the Court (see, Schulz v New York State Legislature, 92 NY2d 917).