439 S.E.2d 448

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Blaine K. WILSON, Defendant Below, Appellant.**

**No. 21680.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Dec. 15, 1993.

David M. Finnerin, Parkersburg, for appellant.

Michele Rusen, Parkersburg, for the State.

PER CURIAM:

This is an appeal by Blaine K. Wilson from an October 7, 1992, decision of the Circuit Court of Wood County denying the Appellant's Motion for a new trial and Motion in Arrest of Judgment and sentencing the Appellant to consecutive sentences as follows: 10–25 years for Count One, sexual assault in the second degree; 1–5 years for Count Two, sexual abuse in the first degree; 1–5 years for Count Four, sexual abuse in the first degree; 5–15 years for Count Seven, sexual abuse by parent, guardian, or custodian; and 5–15 years for Count Ten, sexual abuse by parent, guardian, or custodian. The Appellant's total sentence is therefore not less than 22 years nor more than 65 years. The Appellant asserts a variety of errors and urges this Court to reverse the decision of the lower court. We reverse and remand for a new trial.

## I.

On May 16, 1991, law enforcement authorities in Wood County were informed by Ms. Sue Bibbee, a neighbor of the alleged victim, that thirteen-year-old Natasha S. had been sexually abused by her fifty-three-year-old stepfather, Appellant Blaine Wilson. Natasha had confided in Ms. Bibbee that her stepfather had been sexually abusing her by touching, fondling, and kissing her breasts and buttocks. This conduct had allegedly occurred while the girl's mother was at work and had been going on for over one year.

Upon receiving the report of alleged abuse, Detective Linda Reed of the Parkersburg Police Department contacted the Appellant. He voluntarily met with the detective on May 16, 1991, at police headquarters in Parkersburg. The Appellant was not accompanied by an attorney. During that initial meeting, the Appellant was informed of his constitutional rights and was advised that he was not under arrest and was free to leave. The Appellant did not admit guilt during this meeting and requested that he be permitted to take a polygraph test.[1]

On June 7, 1991, the Appellant voluntarily arrived at police headquarters for the administration of the polygraph test, again unaccompanied by an attorney. He was met by Detective Reed and Sergeant R.D. Estep of the West Virginia State Police. Sergeant Estep was specifically designated by the West Virginia State Police to administer polygraph testing and traveled throughout the state for this purpose. Sergeant Estep advised the Appellant of his constitutional rights, and the Appellant signed a rights form acknowledging that he had been so advised. Sergeant Estep testified that he next received background information from the Appellant and interviewed him regarding the allegations. The polygraph test was then administered. At the conclusion of the test, Sergeant Estep informed the Appellant that the results indicated that he had not been truthful. Sergeant Estep testified that the Appellant then admitted to allegations that he had inappropriately touched Natasha.

Detective Reed was then summoned by Sergeant Estep in order that Detective Reed could take any statement that the Appellant was going to give. Detective Reed testified that the Appellant then signed a rights form and indicated that he was willing to make a statement and answer any questions. According to the testimony of Detective Reed, the Appellant then admitted that he had touched Natasha's breasts and buttocks and that he had, on numerous occasions, exposed his genitals to her. The Appellant denied, however, having sexual intercourse with Natasha.

---

1. The Appellant denied the accusations of abuse which had been made by his step-daughter but agreed to move out of the family residence until the completion of the investigation.

On March 20, 1992, a pre-trial suppression hearing on the voluntariness of the statements was held before the lower court. The Appellant denied having been informed of his constitutional rights by Sergeant Estep, denied reading the rights forms, and testified that Sergeant Estep had been loud and abusive following the polygraph test. He did not deny signing the forms. The Appellant indicated that Sergeant Estep's demeanor changed abruptly after he had administered the polygraph test and learned the results. The Appellant testified that Sergeant Estep had cursed him, threatened to hit him, and otherwise placed him in fear. The Appellant stated that although he had cried, he had not admitted any wrongdoing toward Natasha.

■ At the conclusion of the suppression hearing, the court commented that the evidence regarding the circumstances of the Appellant's alleged confession was conflicting. The lower court declined to suppress the Appellant's statements, indicating that the jury would have to make the ultimate decision regarding whether the alleged confession occurred and/or was voluntary. The lower court recognized that the issue of voluntariness of an alleged confession must be shown by the State by a preponderance of the evidence in order to be admitted at trial. This statement is consistent with our holding in *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). In syllabus point 1 of *Vance*, we explained that " '[t]he State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr*, [158] W.Va. [905], 216 S.E.2d 242 (1975)." *Id.* at 467, 250 S.E.2d at 148.

■ However, we also explained at syllabus point 2 of *Vance* that "[i]t is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." *Id.* Further, we stated in syllabus point 3 that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." *Id.*[2]

At the trial held on August 24, 25, and 26, 1992, Natasha testified that her stepfather had begun fondling her breasts and inappropriately touching other parts of her body in 1990. She stated that her stepfather had told her that if she told anyone about these incidents, she would be "put away." Natasha testified that one such incident occurred on April 11, 1990,[3] when the Appellant entered her room, removed her clothing, touched her breasts and stomach, and forced her to have sexual intercourse. Natasha related a similar incident occurring in August 1990. Natasha also stated that on other occasions, the Appellant had grabbed her breasts and buttocks and had exposed his penis to her.

■ The Appellant assigns the following errors: (1) error in denying the Appellant's motion for compliance with his discovery request regarding inspection and copying of results of the polygraph test, (2) error in denying the motion for judgment of acquittal and subsequent motion in arrest of judgment as to sexual exploitation, (3) error in refusing the Appellant's instructions regarding the need to scrutinize the testimony of the prosecuting witness, voluntariness of the alleged confession, and inadmissibility of polygraph results, (4) invalidity of sentences for counts one, seven, and ten due to a change in the law regarding the length of sentence, (5)

2. While the Appellant does not assign error to the lower court's decision to allow the issue of voluntariness to go to the jury, it is useful to note that the trial judge did comply with the mandates of *Vance* in permitting the jury to examine the issue of voluntariness. The Appellant's contention that the trial judge erred by failing to instruct the jury of the issue of voluntariness after allowing the jury to hear evidence of the alleged confession is dealt with in a subsequent section of this opinion.

3. Natasha apparently remembered the precise date of April 11, 1990, because it was her grandmother's birthday. When asked on direct examination what she remembered happening on that date, she responded as follows: "That my mother called my grandmother ... to wish her a happy birthday; and after she went to work later, then he [the Appellant] raped me."

double jeopardy violation in allegedly sentencing the Appellant twice for the same offense, (6) sentences which were disproportionate to the character and degree of the offenses. Although the Appellant assigns this multitude of errors,[4] we focus our discussion on the inadmissibility of polygraph results .and the refusal of the lower court to give the requested instruction on the voluntariness of the alleged confession, and we reverse on those bases.

## II. Polygraph Testing

■ We conclude that the lower court erred by failing to instruct the jury regarding the inadmissibility of polygraph test results. We further conclude that plain error was committed in the admission of testimony regarding the actual results of that polygraph test.[5] Appellant's instruction number five would have informed the jury of the following:

> During the course of this trial, there has been mention of the fact that a polygraph or lie detector test may have been given. In this regard, you are hereby instructed that the results of such tests are not generally accepted in the scientific community as being accurate testing devices and

therefore the alleged results of polygraph tests are not admissible in a court of law.

■ Counsel for the Appellant made a tactical decision that the Appellant's request for the administration of the polygraph test and the circumstances surrounding the testing had to be presented to the jury to support the Appellant's position that he did not confess to any wrongdoing and that he was humiliated and treated inappropriately during the interview which followed the polygraph test. Prior to introducing such evidence, however, counsel for the Appellant attempted to obtain approval from the circuit court of an instruction which would have informed the jury that results of polygraph testing were not admissible. *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979), addresses the inadmissibility of polygraph test results. Syllabus point 2 very succinctly provides that "[p]olygraph test results are not admissible in evidence in a criminal trial in this State." *Id.* at 602, 252 S.E.2d at 40. Nevertheless, the lower court declined to agree to such an instruction prior to the actual discussion of the testing within the trial and reserved judgment until the evidence of the testing was introduced.

The results of the polygraph test were revealed to the jury during the examination of Sergeant Estep.[6] When counsel for the

---

4. We specifically address the allegations of error involving the polygraph testing and the voluntariness instruction within the text of this opinion. With regard to other allegations of error, we find no merit in the contention of the Appellant that his conviction for sexual exploitation was improperly based. He argues that he engaged only in indecent exposure and was therefore technically charged with the wrong offense. However, the appropriate charge was sexual exploitation since the Appellant did cause the child to participate in sexually explicit conduct as defined in West Virginia Code Section 61–8D–5 (1992).

Likewise, we find no merit in the Appellant's contentions that his sentence was disproportionate to the crimes committed. However, with regard to assignment of error number four relating to invalid sentences for counts one, seven, and ten, we note that the State has conceded error on that point. Thus, sentencing must also be reevaluated.

We also caution the prosecution on remand to be conscious of the double jeopardy principles involved in this matter and to be diligent in following the mandates of our recent discussions of this issue in such cases as *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992) and *State v. Rummer*, 189 W.Va. 369, 432 S.E.2d 39 (1993).

5. The Appellant made no objection at trial and no assignment of error in this appeal with regard to the admission into evidence of the actual results of the polygraph testing.

6. Prior to his cross-examination of Sergeant Estep, counsel for the Appellant requested a bench conference and informed the trial judge as follows:

> Your Honor, before I cross examine this witness, I will tell the Court that I have prepared an instruction that I am going to ask the Court to give, that there may have been mentioned in the course of this trial a polygraph. Of course, the fact is, the Defendant was out there for a polygraph test, and that is how this interview took place. Of course, the State didn't want to raise the subject of a polygraph, but I want to make sure that the Court will offer this instruction, that test results, the polygraph results are not admissible evidence in the trial.

The trial court responded by informing counsel for the Appellant that whether an instruction on the issue would be given to the jury would depend "on what the evidence is and how it goes." Once the trial court was informed by the State

Appellant inquired on cross-examination as to whether Sergeant Estep was present at the police station on the day in question to administer a polygraph test to the Appellant, the sergeant answered that he was indeed there for that purpose, and questioning regarding the circumstances of the events of the day then ensued. It was on redirect examination of Sergeant Estep by the prosecution that mention of the actual results of the test was made. Specifically, the prosecutor asked the sergeant whether he had informed the Appellant of his interpretation of the performance on the polygraph test. The sergeant indicated that he had told the Appellant that the results showed that the Appellant had not been truthful during the test.

Counsel for the Appellant made no objection to such questioning or the answer given by Sergeant Estep which clearly informed the jury that the results indicated that the Appellant had been lying. In his brief, counsel for the Appellant explained that, "[c]onsistent with the Defendant's theory of defense," defense counsel made no objection to the dialogue initiated by the prosecutor.[7] Counsel for the Appellant, according to the Appellant's brief, was "relying upon the instruction which would tell the jury that poly-

graphs are not valid testing devices, prepared in advance of trial, and discussed with the Court at the side bar conference, before the subject of polygraph testing was ever brought out." In concluding that the requested instruction would not be given, the court explained as follows:

That is the law, but the jury doesn't get told that. That is a rule of evidence. They were not admissible. You don't instruct juries on rules of evidence, only on substantive law, so I will refuse that. This has no place in this case. There aren't any results of any lie detector test in this case.

Counsel for the Appellant then explained that Sergeant Estep's statement that the results indicated that the Appellant had been untruthful could certainly be construed by the jury to be the results of the test. In restating that no such instruction would be given, however, the lower court stated as follows:

If there had been an objection to it, at that time, I probably would have sustained it, probably would have instructed the jury to disregard that because that is a rule of evidence, but there having been no objection to the testimony as given at the time, I can't rule on it now.

---

that the Appellant had not passed the polygraph test, the court stated that "[i]t is not admissible unless by agreement." Counsel for the Appellant then began his cross-examination and elicited testimony to the effect that a polygraph test had been taken by the Appellant.

Upon redirect examination by the State, Sergeant Estep was questioned regarding the Appellant's initial denial of inappropriate sexual activity with his step-daughter. The exchange progressed as follows:

Q. And then after you completed the test, did his story change?

A. Yes, ma'am.

Q. Did you tell him what your interpretation of his performance on the test was?

A. I sure did, and I told him that he hadn't told me the truth.

Q. And it was after that, then, that he changed his story and admitted that he had touched the girl like you described?

A. Yes, ma'am....

There was no objection to that line of questioning or to the statement by Sergeant Estep that the test had indicated that the Appellant had not been truthful, and the testimony of the next witness was begun.

7. We explained the following in syllabus point 4 of *State ex rel. Redman v. Hedrick,* 185 W.Va. 709, 408 S.E.2d 659 (1991):

'Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.' Syl. pt. 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

185 W.Va. at 711, 408 S.E.2d at 661. While there has been no contention of ineffective assistance of counsel in this case, we note that counsel for the Appellant wandered dangerously near the edge of ineffective assistance of counsel by permitting the evidence regarding actual results to be disclosed to the jury without even objecting. The Appellant certainly, as we emphasize within the body of this opinion, had the right to present evidence of the circumstances of the testing in order to provide context to the issue of the voluntariness of the statements he allegedly made. However, even if the trial judge had given the requested instruction, it would have remained highly prejudicial for the jury to hear evidence of the Appellant's failure of the polygraph test.

The lower court further explained that if there was any error, it was invited error.

We agree with the contention of the Appellant that under the unique facts of this case, presenting evidence of the taking of a polygraph examination may have been necessary under the defense strategy and in order to give context to the circumstances surrounding the taking of the statement. Consequently, the lower court erred by failing to give the desired instruction regarding the inadmissibility of polygraph test results, so that the jury was not left to speculate on the results and why they were not placed in evidence. We also hold that although no objection was made to the introduction of evidence regarding the actual results of the polygraph, introduction of such evidence was plain error pursuant to our holding in *Frazier*, 162 W.Va. at 620, 252 S.E.2d at 48–49. We explained the application of the plain error doctrine in *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990). In syllabus point 6 of *Collins*, we explained:

> "The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syllabus Point 4, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988).

186 W.Va. at 3, 409 S.E.2d at 183.

A related issue is the Appellant's contention that he was entitled to view and copy the results of the polygraph test prior to trial. Rule 16(a)(1)(D) of the West Virginia Rules of Criminal Procedure provides that reports of examinations and tests are to be provided to a defendant if such reports are "material to the preparation of the defense or are intended for use by the state as evidence in chief at trial." As argued by the State, the production of such results is not mandatory, and there is an element of discretion with the lower court in determining whether to compel production. Ordinarily, the State's position would reflect the general rule. However, where such evidence is inexorably intertwined with the suppression issue, which was so crucial to the defense, such evidence was important to the preparation of a defense and should have been made available.

### III. Voluntariness Instruction

The Appellant also contends that the lower court erred by refusing the offered instruction on the voluntariness of the alleged confession. Instruction number four would have informed the jury that before they were permitted to consider any incriminating statement of the accused, the State must prove by a preponderance of the evidence that the statement was voluntarily made. In syllabus point 5 of *Vance*, we explained that "[i]n all trials conducted hereafter where a confession or admission is objected to by the defendant at trial or prior to trial on the grounds of voluntariness, the trial court must instruct the jury on this issue if requested by the defendant." 162 W.Va. at 467, 250 S.E.2d at 148. The lower court refused to follow the mandates of *Vance*, explaining that the "requirement set forth in this opinion is purely dictum, anyway."

We disagree with the lower court's construction of our holding in *Vance* and conclude that the lower court's failure to instruct the jury on the voluntariness issue was reversible error. Based upon the foregoing, we reverse the decision of the Circuit Court of Wood County and remand this matter for a new trial.

Reversed and remanded.