459 S.E.2d 112

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Eleanor CHAMBERS, Defendant Below, Appellant.**

No. 22336.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided March 24, 1995.

Rehearing Denied July 12, 1995.

Darrell V. McGraw, Jr., Atty. Gen., Shawn Anthony Taylor, Asst. Atty. Gen., Charleston for appellee.

Lewis J. Palmer, Jr., Fairmont, Richard G. Rundle, Pineville, for appellant.

NEELY, Chief Justice.

Eleanor Chambers appeals from her conviction by a jury, on 17 November 1993, of first degree arson, by procuring the burning of her home in violation of *W.Va.Code* 61–3–1 [1935]. The trial court sentenced Mrs. Chambers to not less than two nor more than twenty years in the West Virginia State Penitentiary. Execution of the sentence was stayed pending this appeal.

I.

In January 1993, Mrs. Chambers bought a house for $17,000 from her brother, John Bryant. She made a $2,000 down payment and agreed to make payments of $134.96 each month until the house was purchased. Mrs. Chambers insured the house with Allstate Insurance Company for $45,000. The previous owner, who had defaulted on mortgage payments to Mrs. Chambers' brother, had also purchased Allstate Insurance for the house in the amount of $45,000.

Mrs. Chambers was home alone on the evening of 15 April 1993 when she felt sick and went to the hospital. The hospital, located approximately one hour from her house, admitted her at 2:35 a.m. on 16 April. She was discharged at 3:20 a.m. the same morning. Mrs. Chambers drove to her mother's house, approximately 35 to 40 minutes away from the hospital, instead of returning to her own house. At 3:29 a.m., 16 April, the Mullins Volunteer Fire Department responded to a fire at Mrs. Chambers house. Mrs. Chambers asserts that she was unaware of the explosion and fire that destroyed her house until she returned from her mother's house two days later.

The cause of the fire at Mrs. Chambers house was initially described as "undetermined" in a report by the Mullins Volunteer Fire Department. However, subsequently the report was altered by the Department, indicating that the fire was "suspicious." Allstate insurance company, Mrs. Chambers' insurer, hired UBA Fire and Explosion Investigation to investigate the fire. UBA's report was broken into three parts.

The owner of UBA who is also an engineer wrote two parts of the report and concluded that the cause of the fire was undetermined. However, part three was written by the Assistant Fire Marshall, Paul Richie, Jr. who concluded that the fire was incendiary and had been caused by a timing device. There was severe damage in approximately three-fourths of the house, with moderate damage elsewhere. No bed springs, furniture or other typical indications of occupation were observed by the fire incident commander responding to the scene. On 16 July 1993, Mrs. Chambers was indicted on one count of first degree arson. Following a jury trial, Mrs. Chambers was convicted and sentenced.

## II.

■ Mrs. Chambers appeals from the guilty verdict, asserting that the trial court erred in admitting evidence that she was offered the opportunity to take a polygraph test, which she declined to accept.[1] During the prosecution's case-in-chief, Police Chief James F. Miller and State Fire Marshall Investigator Paul C. Richie both testified that an offer to take polygraph test was made to the appellant. Mrs. Chambers asserts that the admission of evidence that she initially agreed to submit to a polygraph test,

and then later refused to do so, constituted reversible error. We agree.

■ Syllabus Point 2 of *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979) unequivocally states that "[p]olygraph test results are not admissible in·evidence in a criminal trial in this State." Recently, in *State v. Wilson*, 190 W.Va. 583, 439 S.E.2d 448 (1993), we overturned the conviction of a defendant because a police officer testifying for the State introduced the results of a polygraph test taken by the defendant, without objection by counsel. The defense later submitted a jury instruction on the inadmissibility of polygraph results, which was refused.

On appeal, we held:

> [T]he lower court erred by failing to give the desired instruction regarding the inadmissibility of polygraph test results, so that the jury was not left to speculate on the results and why they were not placed in evidence. We also hold that although no objection was made to the introduction of evidence regarding the actual results· of the polygraph, introduction of such evidence is *plain error*.

*Wilson*, 190 W.Va. at 589, 439 S.E.2d at 454.

The State argues that our general rule regarding the inadmissibility of polygraph test results in criminal trials is not implicated by the facts of this case because Mrs. Chambers never took a polygraph, and no reference to *test results*, per se, was presented. However, we find that it would be inconsistent and ineffective to permit evidence of a defendant's acceptance or denial of an offer to take a polygraph test, while ostensibly enforcing a blanket prohibition on the admissibility of polygraph test results. The same prejudicial and unreliable inferences about

---

1. The Appellant's brief lists ten assignments of error. She contends that the trial court erred: (1) in not setting aside the verdict because of the failure of a juror and the assistant prosecutor to disclose a prior attorney-client relationship, during jury selection; (2) by allowing an expert witness to testify that, in his opinion, the appellant was guilty of first degree arson; (3) in denying appellant's motion for a new trial on the grounds that the verdict was not responsive to the indictment; (4) in admitting the introduction of hearsay evidence, by an expert witness, that the appellant had previous fires; (5) in permit-

ting the State to cross-examine the appellant about attorney-client communications; (6) in giving State Instruction No. 2; (7) in giving State Instruction No. 3; (8) because the evidence was insufficient to support a guilty verdict for "procuring to burn"; (9) in admitting prejudicial irrelevant and hearsay evidence; in admitting evidence that the appellant was offered a polygraph test, and that she rejected the offer. We need not consider the assignments listed above because we are reversing on the grounds of the polygraph evidence, and these other grounds·are not fairly raised.

the innocence or guilt of the defendant will result from such a flawed approach to this issue.

An Illinois court concisely summarized our concerns, stating that:

> Testimony that a defendant was offered a polygraph test, or that he refused one, interjects into the case inferences which bear directly on his guilt or innocence: either he failed the test -as the State presumably would not pursue charges against an innocent- or he refused to submit to testing in fear that his guilt would be shown. That which may not be accomplished directly by evidence of polygraph test results, may not be accomplished indirectly by references to whether a defendant sought, declined, or was offered a polygraph test.

*People v. Eickhoff,* 129 Ill.App.3d 99, 84 Ill. Dec. 300, 303, 471 N.E.2d 1066, 1069 (4 Dist. 1984).

Particularly suspect is the fact that neither Police Chief Miller, nor State Fire Marshall Investigator Richie, was naive or inexperienced as a witness such that reference to polygraph testing might have inadvertently been made. In fact, the transcript reveals that the polygraph evidence came out during questioning by the State, in answers that were not particularly responsive to the questions which preceded them. It seems highly unlikely that *both* of these witnesses innocently injected a reference to polygraph testing.

In any event, the admission of Mrs. Chambers' refusal to take a polygraph test was plain error. We hold that reference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible.[2] Other jurisdictions considering this issue have also concluded that "[e]vidence regarding the results of a polygraph test or the defendant's willingness or refusal to submit to one is inadmissible." [Citations omitted.] *State v. Pressley,* 290 S.C. 251, 349 S.E.2d 403, 404 (1986); *See also Russell v. State,* 798 S.W.2d 632 (Tex.App.–

Fort Worth 1990); *State v. Fenney,* 448 N.W.2d 54 (Minn.1989); *People v. Eickhoff,* 129 Ill.App.3d 99, 84 Ill.Dec. 300, 471 N.E.2d 1066 (4 Dist.1984); *State v. Biddle,* 599 S.W.2d 182 (Mo.1980); *State v. Driver,* 38 N.J. 255, 183 A.2d 655 (1962).

For the foregoing reasons, the judgment of the Circuit Court of Wyoming County is reversed.

Reversed and remanded.

BROTHERTON, J., did not participate.

CLECKLEY, J., deemed himself disqualified and did not participate.

FOX and STEPHENS, JJ., sitting by temporary assignment.

---

2. We note that the trial judge's curative instruction, merely advising the jury that the results of polygraph tests are not admissible over objection in criminal trials, was insufficient.