# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**William J. Harrison,**
**Defendant Below, Petitioner**

**vs)  No.  16-0165** (Webster County 13-P-9)

**David Ballard, Warden,**
**Mt. Olive Correctional Complex,**
**Plaintiff Below, Respondent**

**FILED**

**November 17, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William J. Harrison, by counsel Steven B. Nanners, appeals the January 20, 2016, order of the Circuit Court of Webster County that denied his petition for post-conviction habeas corpus relief. Respondent David Ballard, Warden, Mt. Olive Correctional Complex, by counsel Zachary Aaron Viglianco, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 15, 1996, a SWAT team kicked down the door of petitioner's apartment and arrested him by force. Petitioner was charged with breaking and entering into the Department of Highways ("DOH's") garage in Webster County, and grand larceny of the DOH's Chevrolet Celebrity (the "state car"). State Police Sgt. Redis D. Hinkle read petitioner his *Miranda* rights and then transported petitioner to the Webster County magistrate court where he was arraigned. At the arraignment, petitioner claimed he was indigent and requested appointed counsel. Thereafter, the magistrate asked Sgt. Hinkle about the investigation into a missing person, eighteen-year-old Jennifer Lee Selman (the "victim"), within earshot of petitioner. Petitioner interjected that he wanted to talk to the police about the victim. The magistrate informed petitioner that he was not required to talk to the police and that he had the right to remain silent; the magistrate then repeated these admonitions.

Thereafter, Sgt. Hinkle transported petitioner to the State Police barracks. There, Sgt. Hinkle read petitioner his *Miranda* rights and reviewed the *"Interview/Miranda Rights Form"* with him. Petitioner then signed the form. Thereafter, petitioner gave a series of recorded statements over a period of eight or nine hours. Petitioner initially denied any knowledge about the offenses with which he was charged. However, petitioner eventually admitted to entering the DOH garage and stealing a pair of brown work boots. He also admitted that he had driven the stolen state car. Later, petitioner confessed that he was in the state car when it collided with the

1

victim's car and that others in the car placed the victim in the car's trunk. Finally, petitioner admitted that he remained in the state car after the others placed the victim into the trunk and drove to a refuse pond at a strip mine in Braxton County. There, the others killed the victim by drowning her in the pond. Petitioner stated that he had nothing to do with the victim's kidnapping or her murder, and that he left the scene soon after he and the others arrived at the pond. Thereafter, petitioner was charged with kidnapping and the first-degree murder of the victim.

Also on October 15, 1996, the state police executed a search warrant for the apartment in which petitioner was residing that authorized the police to search for evidence of breaking and entering and grand larceny. The police seized a pair of brown work boots that were later identified as belonging to a state employee who kept the boots at the DOH garage in Webster County.

Prior to trial, petitioner moved to suppress his statements to the police on the ground his right to counsel attached at his initial appearance and that he was questioned absent counsel. Petitioner also moved to sever the breaking and entering and larceny charges from the kidnapping and murder charges. Finally, petitioner moved for a change of venue. Following various hearings, the trial court denied petitioner's motion to suppress his statements to the police, and denied his motion for severed trials on the ground that joinder was mandatory under Rule 8 of the Rules of Criminal Procedure. However, the trial court granted petitioner's motion for a change of venue and moved petitioner's trial from Webster County to Gilmer County.

Petitioner's trial commenced on June 16, 1997, and continued for nearly four weeks. Attorney David Karickhoff represented petitioner at trial. The evidence at trial revealed the following: On October 5 or 6, 1996, petitioner, or someone he was with, broke into the DOH's garage in Webster County. There, petitioner stole a pair of "Mickey Mouse" work boots. The state car was also stolen. Witnesses observed petitioner driving the state car in Webster, Nicholas, and Braxton counties on October 6, 1996. Petitioner showed one witness the state car and the contents of the state car's trunk, which included a pair of "Mickey Mouse" work boots. Late that same night, the victim left her job at Pizza Hut in Summersville. While driving toward her parent's home in Webster County, the victim's car and the stolen state car collided. The victim was placed into the state car and driven from the scene; however, the victim's purse remained in her car. Soon thereafter, the victim's abandoned car was found at the side of the road and the police were called. At about 6:00 a.m. on the morning of October 7, 1996, the state car was found ablaze near Cowan. On October 10, 1996, following an intensive police investigation, the victim's body was found submerged in a refuse pond in Braxton County. The victim's ankles and neck were wrapped with bootlaces that were attached to cinder blocks. The cinder blocks held the victim's body under the water. A pair of "Mickey Mouse" work boots were found near the pond, which were missing their laces. An autopsy revealed that the victim had drowned.

On closing, petitioner's trial counsel conceded that petitioner was at the DOH garage when the state car was stolen and that, while there, petitioner took the pair of brown boots later found in his apartment; however, counsel claimed that another person, and not petitioner, broke into the garage. Petitioner's counsel also admitted that petitioner was in the state car when it collided with the victim's car, and that he remained in the state car on the way to refuse pond

where the victim's body was eventually found. However, petitioner's counsel claimed that petitioner had nothing to do with the kidnapping or murder, and that he ran from the scene as others killed the victim and left her body in the pond.

On July 11, 1997, the jury found petitioner guilty on all four counts: first-degree murder, kidnapping, breaking and entering, and grand larceny. The jury did not recommend mercy on either the murder or kidnapping convictions. The trial court sentenced petitioner to life without the possibility of parole for the first degree murder conviction, life without the possibility of parole for the kidnapping conviction, one to ten years in prison for the breaking and entering conviction, and one to ten years in prison for the grand larceny conviction. The trial court ordered these sentences to run consecutively.

On October 10, 1997, the trial court denied petitioner's motion for a judgment of acquittal or a new trial. Thereafter, petitioner's trial counsel filed a direct appeal on petitioner's behalf. The Court refused petitioner's appeal on November 10, 1998 (No. 981640).

Petitioner filed a pro se petition for post-conviction habeas corpus relief in February of 2013. Thereafter, the habeas court appointed Steven Nanners as counsel. Mr. Nanners filed an amended habeas petition listing the following nine grounds for relief: (1) improper use of petitioner's statement in violation of his Sixth Amendment rights; (2) improper venue; (3) improper joinder of offenses at trial; (4) illegal or improper search warrant; (5) prosecutorial misconduct in referencing polygraph testing during closing argument; (6) improper "aider and abettor" jury instructions; (7) prejudicial pretrial publicity; (8) excessive sentence; and (9) mental competency or lack of criminal responsibility at the time of the crime/trial.

The habeas court convened petitioner's omnibus evidentiary hearing on February 3, 2015. Petitioner called no witnesses. The State called then-retired Sgt. Hinkle and petitioner's trial counsel, David Karickhoff. Thereafter, by joint motion of the parties, the habeas court ordered petitioner to undergo a forensic examination to determine competency and criminal responsibility. Ralph S. Smith, Jr., M.D, found that petitioner did not lack criminal responsibility or mental competency at the time of the crime. By order entered January 20, 2016, the habeas court denied relief.

Petitioner now appeals the January 20, 2016, order.

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

Petitioner raises seven assignments of error on appeal. Petitioner first argues that the trial court improperly permitted his October 15, 1996, statements to the police to be admitted at trial.

Petitioner highlights that the habeas court found that his Sixth Amendment right to counsel attached at his initial appearance. Petitioner argues that because the police questioned him about the victim's murder in the absence of counsel, his statements were inadmissible. Petitioner also claims that even if he initiated the questioning, the State cannot show that he knowingly waived his right to have counsel present during questioning. Petitioner concedes that the police informed him of his *Miranda* rights, that he executed a written waiver of his right to have counsel present during questioning prior to his interrogation, and that he executed a second written waiver of his right to have counsel present during his interrogation.

The Sixth Amendment of the United States Constitution and Article 3, Section 14 of the West Virginia Constitution guarantee the right to counsel. "That right, however, attaches only 'at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *State v. Moore*, 158 W.Va. 576, 582, 212 S.E.2d 608, 612 (1975) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). "An adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate . . . and is, *inter alia*, informed . . . of the complaint against him and of his right to counsel." Syl. Pt. 1, in part, *State v. Gravely*, 171 W.Va. 428, 299.E.2d 375 (1982). Moreover, the protection of the right to counsel afforded under the Sixth Amendment is offense-specific, in that it "arises as to the specific offense which is charged." *State v. Williams*, 226 W.Va. 626, 629, 704 S.E.2d 418, 421 (2010).

Petitioner's right to counsel clearly attached upon his appearance before the magistrate with respect to the breaking and entering and grand larceny charges. The question here is whether petitioner's right to counsel attached to questions about the victim's kidnapping and murder. Petitioner avers that his right to counsel attached to the subsequently-charged kidnapping and murder charges at his arraignment on the breaking and entering and grand larceny charges because all four charges were later joined. The trial court agreed with this reasoning. However, the trial court determined that, despite the attachment of petitioner's right to counsel with regard to all four eventual charges, petitioner effectively recanted that right initiating his conversation with law enforcement, and by making knowing and voluntary waivers of that right. The habeas court agreed with this finding, as do we.

We have held that, "[f]or a recantation of a request for counsel to be effective: (1) the accused must initiate a conversation; and (2) must knowingly and intelligently, under the totality of the circumstances, waive his right to counsel." Syl. Pt. 1, *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987). With regard to the first factor, the record on appeal clearly shows that petitioner initiated his conversation with the police, despite the magistrate's repeated warnings to petitioner that he did not have to speak with the police and had the right to remain silent. As for the second factor, the record on appeal shows that, at the police barracks, petitioner was given an "Interview/Miranda Rights Form" ("waiver form") which was read to him. The waiver form indicates that petitioner was under arrest for grand larceny and breaking and entering, and that he was being questioned with regard to the "murder" of the victim. Petitioner initialed the waiver form. In so doing, he indicated he understood his rights, was not under the influence of drugs and/or alcohol, suffered from no mental disease or defect, and was knowingly and voluntarily waiving his rights and willing to give a statement. The record also shows that, during a break in

the questioning, petitioner was again advised of his *Miranda* rights and then signed a second waiver form. On this record, we cannot say that the habeas court erred in finding that petitioner "knowingly and intelligently, under the totality of the circumstances," waived his right to counsel. Accordingly, we find no error.

Petitioner's second assignment of error is that Webster County was an improper venue for petitioner's indictment. Specifically, petitioner argues that, because the victim's body was found in Braxton County, the State failed to prove Webster County was the proper venue for the murder charge. Rule 18 of the West Virginia Rules of Criminal Procedure provides that, "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a county in which the offense was committed." "Where a crime is committed in more than one county, venue exists in any county in which a substantial element of the offense occurred. W.Va. Code § 61–11–12 (1984)." Syl. Pt. 2, *State v. Clements*, 175 W.Va. 463, 334 S.E.2d 600 (1985). "The State in a criminal case may prove the venue of the crime by a preponderance of the evidence, and is not required to prove the same beyond a reasonable doubt." Syl. Pt. 5, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

Petitioner was charged with breaking and entering into the DOH garage in Webster County and for the larceny of the State car from that garage. Soon thereafter, the State car was used in Webster County to run the victim's car off the road. The victim was then kidnapped from Webster County and taken to Braxton County, where she was murdered. These serial crimes occurred close in time across two bordering counties as part of a continuing and ongoing criminal scheme to bring about the death of the victim. *See State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004). Petitioner offered no evidence to suggest a superseding or intervening cause that would break the causal link in these serial crimes. Nor did the petitioner attempt to defeat the premise that his offenses were part of a continuing or ongoing criminal scheme or plan. Having reviewed the record on appeal, we concur with the habeas court's finding that the State proved, by a preponderance of the evidence, that venue on the murder charge, and all other charges, was proper in Webster County. Accordingly, we find no error.

Petitioner's third assignment of error is that the trial court improperly joined all four offenses in this matter at trial. Petitioner argues that, even if joinder of the offenses was mandatory under Rule 8 of the West Virginia Rules of Criminal Procedure, Rule 14(a) of those Rules authorizes a court to sever trials where joinder or consolidation would yield prejudice to the State or defense. Petitioner avers he was prejudiced by the joinder at trial given that evidence of kidnapping or murder would not be admissible for any legitimate purpose at a trial for property crimes, and vice versa. Therefore, he maintains the jury may have decided his case on his alleged criminal disposition, rather than on the evidence.

We have held that,

> "'A trial court may in its discretion order two or more indictments, or informations, or both, to be tried together if the offenses could have been joined in a single indictment or information, that is, the offenses are of the same or similar character or are based on the same act or transaction, or on two or more acts or transactions connected together or constituting a common scheme or plan.' Syl.

5

pt. 5, *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981)." Syllabus, *State v. Eye*, 177 W.Va. 671, 355 S.E.2d 921 (1987).

Syl. Pt. 2, *State v. Hatfield*, 181 W.Va. 106, 107, 380 S.E.2d 670, 671 (1988). We have also held that,

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va.R.Crim.P. 14(a) is a matter within the sound discretion of the trial court.

Syl. Pt. 3, *id.*

We concur with the habeas court's finding that joinder was appropriate. A trial court's discretionary power to sever flows directly from Rules 8 and 13 of the West Virginia Rules of Criminal Procedure. Rule 13 permits a joint trial of offenses charged in separate indictments, if such offenses could have been joined in a single indictment. The test for consolidation of indictments is the same test used for joinder of offenses under Rule 8 of the West Virginia Rules of Criminal Procedure. Under the permissive joinder rule at Rule 8(a)(1), "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are the same or similar character." Under the mandatory joinder rule at Rule 8(a)(2), "all such offenses . . . shall be prosecuted by separate counts in a single prosecution if they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan . . . ."

Here, the habeas court determined that joinder of petitioner's breaking and entering and grand larceny charges with his kidnapping and murder charge was reasonable because, based on the evidence, the acts alleged were connected in time and part of a common scheme or plan. The habeas court also found that the witness testimony and other evidence for the two sets of charges was wholly interrelated. For example, the evidence regarding the breaking and entering at the DOH garage and the theft of the state car would also be necessary evidence for the kidnapping and murder charges, given the key role of the state car in all four crimes. With regard to petitioner's Rule 14(a) "prejudice" argument, we concur with the habeas court's finding that he failed to set forth any evidence to show he was prejudiced by the joinder of his offenses. Therefore, we concur that joinder was appropriate and that the denial of petitioner's motion to sever was appropriate. Accordingly, we find no error.

Petitioner's fourth assignment of error is that the trial court erred in failing to suppress the evidence obtained from the October 15, 1996, search warrant for the apartment in which he was residing. Petitioner's argument on this point, *in its entirety*, follows: Mr. Barker's statement to police did not support the magistrate court's finding of probable cause; therefore, any evidence seized under it, including the boots, should have been suppressed. We note that petitioner fails to identify Mr. Barker or to explain, in any fashion, how Mr. Barker's statement to the police did not support a finding of probable cause. "[A]ppellate courts frequently refuse to

address issues that appellants . . . fail to develop in their brief." *State v. Lilly*, 194 W.Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995). Clearly, petitioner's bare bones and conclusory argument is insufficient to challenge the propriety of the search warrant of his apartment; thus, we reject this assignment of error.

Petitioner's fifth assignment of error is that the State engaged in prosecutorial misconduct when, during trial, it played petitioner's second videotaped police statement to the jury over petitioner's objection. During that videotaped statement, petitioner was asked, "Would you be willing to submit to a polygraph examination to corroborate the statement that you have given?" Petitioner replied, "Yes," although he never ultimately participated in a polygraph examination. Thereafter, on closing, the State again referenced a polygraph examination and the defense objected. In response, the trial court instructed the jury that that statement was improper and should be disregarded.  Also on closing, the State read a passage from the victim's journal that began, "I wish people in the world would learn to be nicer" and went on to talk about "friendliness" and "trust." Petitioner's counsel objected on evidentiary grounds—that the diary was not admitted into evidence—and on relevance grounds. The trial court sustained the objection and told the jury to disregard the purported diary statement. Finally, the State, on closing, called petitioner an "animal" and told the jury that the boots entered into evidence at trial would "march Joe Slick from that chair into prison, with your blessing." We note that petitioner's trial counsel did not to object to either the "animal" or "boots" comments, although petitioner assigns plain error to both.

"In determining whether a statement made or evidence introduced by the prosecution represents an instance of misconduct, we first look at the statement or evidence in isolation and decide if it is improper. If it is, we then evaluate whether the improper statement or evidence rendered the trial unfair." *State v. Guthrie*, 194 W.Va. 657, 677 n.25, 461 S.E.2d 163, 183 n.25 (1995). On appeal, the State concedes that the prosecutor's reference to a polygraph examination and to the victim's diary were improper. "Polygraph test results are not admissible in evidence in a criminal trial in this State." Syl. Pt. 2, *State v Frazier*, 162 W.Va. 602, 252 S.E. 2d 39 (1979). Moreover, a "[r]eference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible." Syl. Pt. 2, *State v. Chambers*, 194 W.Va. 1, 459 S.E.2d 112 (1995). However, "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). "It is not enough that prosecutorial remarks are 'undesirable or even universally condemned.' The test is whether the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 405, 456 S.E.2d at 486 (citations omitted). Specifically, the Court must consider

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at 393, 456 S.E.2d at 474, Syl. Pt. 6.

We consider the prosecutor's improper comments in the light of the record on appeal, which reveals that the State's initial closing comprised over thirty pages of the written transcript and its rebuttal was another twenty-eight pages. Measured against the State's lengthy comments, its few improper statements were isolated and immediately followed by the trial court's admonitions to the jury that the statements were improper and to be ignored. When a prosecutor's improper remarks are unquestionably isolated, this Court usually deems the remarks to be harmless. This is particularly true where it is unlikely that the improper remarks altered the outcome at trial. *See State v. White*, 231 W.Va. 270, 285, 744 S.E.2d 668, 683 (2013). Here, the State introduced dozens of witnesses at trial and other significant evidence that established petitioner's guilt. Therefore, given the isolated nature of the State's improper comments, the trial court's prompt and proper instruction to the jury to disregard the comments, and the copious evidence of petitioner's guilt, and that no "extraneous matters" were implicated by the State's comments, we find it wholly unlikely that the State's improper comments altered the outcome of petitioner's trial.

Petitioner's sixth assignment of error is that trial court improperly instructed the jury regarding aiding and abetting/principal in the second degree. Petitioner argues that the evidence at trial did not support the instruction, which follows.

> The Court instructs the jury that a person who is an absolute perpetrator of a crime is a principal in the first degree. The Court further instructs the jury that a person who is actually present at the scene of the crime at the same time as the criminal act of the absolute perpetrator, is an aider and abettor, and a principal in the second degree, and as such may be criminally liable for the criminal acts as if he were the absolute perpetrator of the crime.

Petitioner avers that he told the police and others that he merely witnessed the breaking and entering, grand larceny, and kidnapping offenses, and that he did not witness and was not involved in the murder of the victim. Petitioner claims that the State presented no evidence that he was present at the scene of the murder, other than his recorded statement to police. Petitioner highlights that the State's theory of the case was that petitioner was the absolute perpetrator, the "principal in the first degree," in the commission of all four crimes. Thus, petitioner contends that the jury instruction was inconsistent with the State's theory. Thus, petitioner concludes that the instruction unfairly increased the likelihood that the jury would convict him of some crime, which, he claims, violated his right to a fair trial.

First, petitioner admits that the aiding and abetting instruction was a correct statement of the law of principle in the second degree. Second, the record on appeal reveals that petitioner told the police that he was at the scene of all four crimes, a fact petitioner's trial counsel admitted on closing. Third, "[s]imply raising the specter of an 'unfair trial' . . . is insufficient to elevate trial error to one of constitutional dimension. . . . It is incumbent upon the courts to distinguish this contention from a constitutional deprivation worthy of habeas consideration." *Painter v. Ballard*, No. 15-0540, 2016 WL 3349168, at *6 n.8 (W.Va. June 15, 2016) (memorandum decision). Although petitioner argues that the instruction was incompatible with the State's

theory of the crime, he fails to state the constitutional right or provision violated if the instruction was, if fact, incompatible. Accordingly, we find no error.

Petitioner's seventh and final assignment of error is that he was prejudiced by improper pretrial publicity, which he claims was not relieved by the trial court's change of venue. Petitioner claims local television and print media intensely covered his proceedings and that the community had significant animosity toward him. Petitioner also claims that, although the trial court moved his trial from Webster County to Gilmer County, Gilmer County receives the same television and print media as does Webster County. Thus, petitioner argues that the change of venue did not resolve the matter of prejudicial pretrial publicity.

We note that petitioner did not seek to move his trial from Gilmer County. Syl. Pt. 2, *Keys v. Hey*, 164 W.Va. 132, 132, 260 S.E.2d 837, 837 (1979) (an additional change of venue may be ordered for good cause shown). Moreover, petitioner presented no evidence below that a pervasive hostile sentiment existed in Gilmer County, which prevented him from receiving a fair trial in that county. "The initial burden of showing good cause for granting a change of venue rests upon the defendant. *State v. Wilson*, 157 W.Va. 566, 202 S.E.2d 828 (1974)." *State v. Peacher*, 167 W.Va. 540, 550, 280 S.E.2d 559, 568 (1981). "The mere existence of widespread publicity is not in and of itself sufficient to require a change of venue." Syl. Pt. 2, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966). Here, the record on appeal reveals that jury selection included extensive voir dire, jurors were struck for cause, and additional potential jurors were summoned at the trial court's instruction. The trial court also retained alternates for the duration of the trial. On this record, we find that petitioner wholly fails to support his claim of prejudice; thus, we find no error.

Accordingly, for the foregoing reasons, we affirm the habeas court's January 20, 2016, order denying petitioner's petition for post-conviction habeas corpus relief.

Affirmed.

**ISSUED:** November 17, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

9